```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

FRANK SMITH,                         :

                    Petitioner,      :    12 Civ. 6215 (PGG)(HBP)

       -against-                     :    REPORT AND
                                          RECOMMENDATION
WILLIAM A. LEE,                      :

                    Respondent.      :

----------------------------------X
```

PITMAN, United States Magistrate Judge:


TO THE HONORABLE PAUL G. GARDEPHE, United States

District Judge,


I.   Introduction


Petitioner, Frank Smith, seeks, by his pro se petition, a writ of habeas corpus pursuant to 28 U.S.C. § 2254 vacating a judgment of conviction entered on November 9, 2009, after a jury trial, by the Supreme Court of the State of New York, New York County (Cataldo, J.), for one count of robbery in the first degree, in violation of New York Penal Law Section 160.15(3). Pursuant to that judgment, petitioner was sentenced as a second violent felony offender to a determinate sentence of twelve years imprisonment to be followed by a five-year term of post-release

supervision.  Petitioner is currently incarcerated pursuant to that judgment.

For the reasons set forth below, I respectfully recommend that the petition be denied.

II.  <u>Facts</u>

    A.  Facts Giving Rise to
       <u>Petitioner's Conviction</u>[1]

Petitioner's conviction arises out of a robbery at a hardware/locksmithing store in Manhattan, committed in early 2007.  Constantine Bernard, the victim of the robbery, was the prosecution's only witness concerning the events giving rise to the conviction.  Bernard testified to the following facts.

On March 8, 2007, petitioner entered Harlem Locksmith, a hardware/locksmithing store owned and operated by Bernard. Bernard and petitioner knew each other.  Bernard had formerly worked at a hardware store owned by petitioner's cousin, Michael Gill, and petitioner occasionally entered that store while

---

[1] Neither side has submitted the transcript of petitioner's trial or sentencing, and the facts set forth herein are drawn from the briefs the parties submitted on direct appeal to the Appellate Division of the Supreme Court.  The briefs do not disclose any disagreement concerning the material facts.

Bernard worked there.  Bernard and petitioner did not, however, socialize with each other.

Bernard testified that he was alone when petitioner entered his store.  After the two exchanged some small talk, petitioner asked Bernard if he could change a one-hundred dollar bill, and Bernard said he could not.  Petitioner loitered in the store while another individual entered the store, purchased some items and left.  Bernard put the proceeds from this sale in his pocket.

Bernard was beginning to feel uneasy at petitioner's presence and told petitioner he had to leave the store to install a lock.  Bernard started to walk out from behind the store's counter, and petitioner put his hand on Bernard's chest and pushed him back.  Petitioner then demanded the money in Bernard's pocket, stating, "you got the money.  I want the money" (Respondent's Brief to the Appellate Division of the Supreme Court ("Resp. Brf.") at 8, annexed as Ex. B to the Declaration of Lisa E. Fleischmann, dated Jan. 4, 2013 (Docket Item 11) (Fleischmann Decl.")).  Bernard asked petitioner if he was joking, and petitioner responded, "I'm serious.  I want the money out of your pocket.  Give me the money" (Resp. Brf. at 8, annexed as Ex. B to Fleischmann Decl.").  Petitioner then picked up a hammer from a display case, raised it over his head and held it about a foot

3

over Bernard's head.  Bernard said, "you['re] kidding me," and
petitioner raised the hammer higher and said, "no, I'm serious.
Give me the money.  I want the money" (Resp. Brf. at 8-9, annexed
as Ex. B to Fleischmann Decl.").  Petitioner then repeatedly
brought the hammer down to within a foot of Bernard's head,
saying, "just give me the money in your pocket, I need the money,
I need it" (Resp. Brf. at 9, annexed as Ex. B to Fleischmann
Decl.").  Bernard was scared and gave petitioner approximately
$320 from his pocket; petitioner did not ask for the contents of
the store's cash register.

  Petitioner put down the hammer and began to walk toward
the door while counting the money.  Bernard told petitioner, "I
can't believe what you just did," and petitioner responded "I
need it man, I need it" (Resp. Brf. at 9, annexed as Ex. B to
Fleischmann Decl.").  Petitioner then left the store.  As peti-
tioner walked away, Bernard said, "I'm going to tell [Gill]."
Petitioner responded, "[I]f you tell anybody[,] I'm going to kill
you" (Resp. Brf. at 10, annexed as Ex. B to Fleischmann Decl.").
Petitioner then got into a cab and left the scene.

  Bernard wanted to call the police to report the robbery
but did not know petitioner's last name, so he first called Gill
to obtain petitioner's full name.  Gill gave Bernard the name and
told him to call the police.  Bernard then called 911, reported

the robbery and provided petitioner's name and physical description.

Police officers subsequently responded to Bernard's store and recovered the hammer with which petitioner threatened Bernard.  No useable fingerprints or DNA were recovered from the hammer.

Petitioner was arrested approximately fifteen months later in June 2008.

Petitioner called one witness, Michael Gill, who confirmed that Bernard called him on the date of the robbery.  However, Gill was unable to recall whether he had given Bernard petitioner's last name.

The defense sought to elicit testimony from Gill that when Bernard called him, Bernard described the events of March 8, 2007 as an "altercation" with petitioner rather than as a robbery (Resp. Brf. at 27, annexed as Ex. B to Fleischmann Decl.").  The Trial Court prohibited the defense from pursuing this line of questioning.  The Trial Court reasoned that the defense was attempting to use Gill's testimony to impeach Bernard by offering evidence of a prior inconsistent statement but that a proper foundation for such impeachment had not been laid.  Specifically, the Trial Court found that because defense counsel had failed to confront Bernard with his putatively inconsistent statement,

counsel could not ask Gill about what Bernard had said to him. The Trial Court also denied defense counsel's application to reopen Bernard's examination so that a proper foundation could be laid.

After approximately twelve hours of deliberations, the jury found petitioner guilty of robbery in the first degree.  The court sentenced petitioner as indicated above.

B.  State Court
    Proceedings

Petitioner appealed his conviction to the Appellate Division of the Supreme Court for the First Department and asserted three claims:  (1) the Trial Court abused its discretion when it refused to allow counsel to reopen Bernard's examination so that a proper foundation could be laid for the impeachment evidence; (2) trial counsel was ineffective for failing to lay a proper foundation for the impeachment evidence and (3) the verdict was against the weight of the evidence.

The Appellate Division affirmed petitioner's conviction on December 20, 2011, stating:

> The verdict was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348 [2007]).  There is no basis for disturbing the jury's credibility determinations, including its resolution of alleged inconsistencies in testimony.  The court prop- erly exercised its discretion in declining to permit

defendant to recall the victim for further cross-exam-
ination.   Defendant sought to recall the victim to lay
a foundation for an allegedly inconsistent statement
that the victim made to defendant's cousin shortly
after the crime.   Defense counsel could have elicited
the alleged inconsistency on cross-examination, and
bringing back the victim and then the cousin for addi-
tional testimony would have delayed the trial.   The
alleged inconsistency had very limited probative value,
and it was cumulative to other impeachment material
(see People v Crawford, 39 AD3d 426, 427 [2007], lv
denied 9 NY3d 864 [2007]).

     Accordingly, there was no violation of defendant's
right to confront witnesses and present a defense (see
Crane v Kentucky, 476 US 683, 689-690 [1986]; Delaware
v Van Arsdall, 475 US 673, 678-679 [1986]).   In any
event, any error in declining to permit defendant to
recall the victim was harmless (see People v Crimmins,
36 NY2d 230 [1975]).

     Defendant also claims his trial counsel rendered
ineffective assistance by failing to lay a foundation
for the alleged inconsistent statement.   However, given
the minimal impeachment value of the alleged inconsis-
tency, defendant has not satisfied the prejudice prong
of an ineffective assistance claim under either the
state or federal standards (see People v Benevento, 91
NY2d 708, 713-714 [1998]; Strickland v Washington, 466
US 668, 694 [1984]).

People v. Smith, 90 A.D.3d 561, 561, 936 N.Y.S.2d 135, 136-37

(1st Dep't 2011).

     The New York Court of Appeals denied petitioner's

application for leave to appeal on April 5, 2012.   People v.

Smith, 18 N.Y.3d 998, 968 N.E.2d 1009, 945 N.Y.S.2d 653 (2012).

C.   The Pending
     Petition

        In his pending petition, petitioner raises the same

three claims that he raised before the Appellate Division.

        Respondent concedes the claims are timely and ex-

hausted.

III.  Analysis

    A.   Standards Applicable
         to Section 2254 Petitions

        A federal court may grant a writ of habeas corpus to a

state prisoner where the state court's adjudication of the

petitioner's federal claim on the merits:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly estab-
> lished Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unrea-
> sonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

        A decision is "contrary to" clearly established federal

law, as determined by the Supreme Court, "if the state court

arrives at a conclusion opposite to that reached by [the Supreme]

Court on a question of law or if the state court decides a case

differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).  A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, supra, 529 U.S. at 413; accord Cullen v. Pinholster, --- U.S. ---, 131 S. Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 75 (2003).  Moreover, a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams v. Taylor, supra, 529 U.S. at 411; accord Lockyer v. Andrade, supra, 538 U.S. at 75.  "An unreasonable application of Supreme Court law must be objectively unreasonable, and not merely wrong[;] [y]et, the trial court's decision need not teeter on 'judicial incompetence' to warrant relief under § 2254(d)." Alvarez v. Ercole, 763 F.3d 223, 229 (2d Cir. 2014) (internal quotation marks, alterations and citations omitted); Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

The standard for habeas "is 'difficult to meet,' because the purpose of [Section 2254] is to ensure that federal

habeas relief functions as a '"guard against extreme malfunctions in the state criminal justice systems"' and not as a means of error correction." <u>Greene v. Fisher</u>, --- U.S. ---, 132 S. Ct. 38, 43 (2011), <u>quoting</u> <u>Harrington v. Richter</u>, 562 U.S. 86, ---, 131 S. Ct. 770, 786 (2011); <u>accord</u> <u>Burt v. Titlow</u>, --- U.S. ---, 134 S. Ct. 10, 16 (2013) (Section 2254 "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."); <u>Metrish v. Lancaster</u>, --- U.S. ---, 133 S. Ct. 1781, 1786 (2013).

> "'[C]learly established Federal law'" for purposes of § 2254(d)(1) includes only "'the holdings, as opposed to the dicta, of this Court's decisions.'" <u>Howes v. Fields</u>, 565 U.S. ---, ---, 132 S.Ct. 1181, 1187, 182 L.Ed.2d 17 (2012) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). And an "unreasonable application of" those holdings must be "'objectively unreasonable,'" not merely wrong; even "clear error" will not suffice. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington v. Richter</u>, 562 U.S. ---, ---, 131 S.Ct. 770, 786-787, 178 L.Ed.2d 624 (2011).

<u>White v. Woodall</u>, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (alterations in original); <u>see also</u> <u>Lopez v. Smith</u>, --- U.S. ---, 135 S. Ct. 1, 4 (2014) ("Of course, [Section 2254] permits habeas relief only if a state court's decision is 'contrary to, or

10

involved an unreasonable application of, clearly established
Federal law' as determined by [the United States Supreme] Court,
not by the courts of appeals."); Rodriguez v. Miller, 537 F.3d
102, 106-07 (2d Cir. 2008) ("No principle of constitutional law
grounded solely in the holdings of the various courts of appeals
or even in the dicta of the Supreme Court can provide the basis
for habeas relief.").  Thus if there is no holding from the
United States Supreme Court clearly addressing the issue pre-
sented, habeas relief must be denied.

> Where there is "[n]o holding" from the Supreme Court on
> the question presented, Carey v. Musladin, 549 U.S. 70,
> 77 (2006), or where Supreme Court cases "give no clear
> answer" to the question presented in the petition,
> Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per
> curiam), a state court's decision can be neither con-
> trary to nor an unreasonable application of clearly
> established federal law, see Knowles v. Mirzayance, 556
> U.S. 111, 122 (2009) ("[I]t is not an unreasonable
> application of clearly established Federal law for a
> state court to decline to apply a specific legal rule
> that has not been squarely established by this Court.")
> (citations and internal quotation marks omitted).

Alfaro v. Capra, 13 Civ. 5867 (RA)(GWG), 2014 WL 4251550 at *7
(S.D.N.Y. Aug. 29, 2014) (Gorenstein, M.J.) (Report & Recommenda-
tion) (alterations in original).

 "[R]eview under § 2254(d)(1) is limited to the record
that was before the state court that adjudicated the prisoner's
claim on the merits."  Greene v. Fisher, supra, 132 S. Ct. at 44,
citing Cullen v. Pinholster, supra, 131 S. Ct. at 1398.

B.   <u>Petitioner's Claims</u>

    1.   Denial of Motion to
       <u>Reopen Bernard's Examination</u>

Petitioner first claims that the Trial Court committed constitutional error when it denied petitioner's application to recall Bernard to lay the foundation for the admission of his allegedly inconsistent prior statement.  Petitioner argues that the Trial Court's ruling violated his Sixth and Fourteenth Amendment rights to confront the witnesses against him and to present a defense (Petitioner's Brief to the Appellate Division of the Supreme Court ("Pet. Brf.") at 24, annexed as Ex. A to Fleischmann Aff.).

Petitioner has failed to demonstrate the violation of a Constitutional right clearly established by Supreme Court precedent.

> "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam) (emphasis omitted).  A trial judge retains "wide latitude" to restrict cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." <u>Van Arsdall</u>, 475 U.S. at 679, 106 S.Ct. 1431; <u>see also</u> <u>Watson v. Greene</u>, 640 F.3d 501, 510 (2d Cir. 2011) (the "decision to restrict cross-examination will be reversed only when the court

> has abused its broad discretion" (internal quotation
> marks omitted)).  "To determine the propriety of
> cross-examination, as with other determinations of
> admissibility of evidence, courts balance prejudice
> versus probative value."  Watson, 640 F.3d at 510.

Corby v. Artus, 699 F.3d 159, 166 (2d Cir. 2012), cert. denied,

--- U.S. ---, 133 S. Ct. 1287 (2013); see also Grant v. Demskie,

234 F.3d 1262 (2d Cir. 2000) (summary order).

Petitioner sought to reopen Bernard's cross-examination

to lay the foundation necessary under state law for the admission

of extrinsic evidence of Bernard's putatively inconsistent

statement, namely, that Bernard told Gill he had had an "altera-

tion" with petitioner, not that petitioner had robbed him.  See

People v. Duncan, 46 N.Y.2d 74, 81, 385 N.E.2d 572, 576, 412

N.Y.S.2d 833, 838 (1978) ("In order to prevent surprise and give

the witness the first opportunity to explain any apparent incon-

sistency between his testimony at trial and his previous state-

ments, he must first be questioned as to the time, place and

substance of the prior statement.").  However, the Supreme Court

has recently noted that it has never held that the Confrontation

Clause entitles a criminal defendant to introduce extrinsic

evidence for impeachment purposes:

> [T]his Court has never held that the Confrontation
> Clause entitles a criminal defendant to introduce
> extrinsic evidence for impeachment purposes.  See
> Delaware v. Fensterer, 474 U.S. 15, 22, 106 S.Ct. 292,
> 88 L.Ed.2d 15 (1985) (per curiam) (observing that "the

13

Confrontation Clause is generally satisfied when the
defense is given a full and fair opportunity to . . .
expose [testimonial] infirmities through cross-exam-
ination").  See also <u>Jordan v. Warden</u>, 675 F.3d 586,
596 (C.A.6 2012); <u>Brown v. Ruane</u>, 630 F.3d 62, 70
(C.A.1 2011).

<u>Nevada v. Jackson</u>, --- U.S. ---, 133 S. Ct. 1990, 1994 (2013)

(<u>per</u> <u>curiam</u>).  Thus, the Trial Court's denial of the opportunity

to introduce extrinsic evidence of Bernard's prior inconsistent

statement did not violate clearly established Supreme Court

precedent.[2]

---

[2]Admittedly, <u>Jackson</u> arose out of an attempt by a defendant
to introduce extrinsic evidence of prior conduct by the victim of
a sexual assault -- not extrinsic evidence of a prior
inconsistent statement -- and is arguably distinguishable on that
ground.  Nevertheless, <u>Jackson</u> is consistent with the language of
numerous lower court decisions that address the scope of the
Confrontation Clause and note that it provides the accused with
the opportunity to attack credibility through cross-examination
and that it does not provide an unlimited right to offer
extrinsic evidence to impeach.  See <u>United States v. Rivera
Rodriguez</u>, 808 F.2d 886, 891 (1st Cir. 1986) ("The Sixth
Amendment right of a criminal defendant 'to be confronted with
the witnesses against him' includes the right to impeach
credibility through cross-examination."); <u>United States ex rel.
Nance v. Fairman</u>, 707 F.2d 936, 942 (7th Cir. 1983)
(notwithstanding failure to exhaust the claim, exclusion of
extrinsic evidence of inconsistent statement did not violate the
Confrontation Clause where "petitioner was able to impeach
[prosecution witness] by alternative means"); <u>United States ex
rel. Laws v. Yeager</u>, 448 F.2d 74, 82-83 (3rd Cir. 1971) ("[T]he
constitutional right to cross-examine witnesses does not include
the right to impeach such witnesses through the use of any
available methods."); <u>United States v. Milkowsky</u>, 896 F. Supp.
1285, 1302 (D. Conn. 1994).

In addition, even if the Confrontation Clause can be read to encompass the admission of extrinsic evidence of inconsistent statements, petitioner's claim still fails.  As noted above, trial courts have wide discretion to impose limits on cross-examination.  <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986); <u>Watson v. Greene</u>, 640 F.3d 501, 510 (2d Cir. 2011).  That wide discretion, in combination with the limited scope of habeas review, drastically limits the situations in which a habeas petitioner can prevail on a claim that his right to cross-examine was unfairly limited:

> The Confrontation Clause does not, however, guarantee unfettered cross-examination.  <u>See Delaware v. Fensterer</u>, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam).  The trial court has "broad discretion . . . 'to impose reasonable limits on . . . cross examination based on concerns about . . . harassment, prejudice, confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant.'"  <u>Brinson</u>, 547 F.3d at 394 (quoting <u>Van Arsdall</u>, 475 U.S. at 679, 106 S.Ct. 1431).

> "Combining the standard for restricting cross-examination with the AEDPA standard, in order to grant [a] habeas petition we would have to conclude not only that the trial court abused its 'broad discretion' by precluding cross-examination . . . but also that the [state appellate court] could not reasonably have determined that the [evidence] would have been excludable had the trial court properly applied 'standard rules of evidence' . . . ."  <u>Watson v. Greene</u>, 640 F.3d 501, 510 (2d Cir. 2011) (quoting <u>Wade v. Mantello</u>, 333 F.3d 51, 62 (2d Cir. 2003)).  "On habeas corpus, . . . we do not sit to review the trial judge's exercise of discretion, but rather to assess whether the state court's denial of [the defendant's] Confrontation

15

> Clause claim was reasonable." Id. at 511.  Moreover,
> for habeas to be warranted, the trial court's denial
> must not have been harmless, that is, it must have had
> a "substantial and injurious effect or influence in
> determining the jury's verdict." Brinson, 547 F.3d at
> 395 (quoting Brecht v. Abrahamson, 507 U.S. 619, 637,
> 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)) (internal
> quotation marks omitted).

Alvarez v. Ercole, supra, 763 F.3d at 230 (alterations in original); see Baez v. Brown, 10-CV-1231 (JS), 2014 WL 2434192 at *5 (E.D.N.Y. May 29, 2014).  As explained below, the Appellate Division's denial of petitioner's claim arising out of the exclusion of Bernard's prior inconsistent statement was, at the very least, well within the range of reasonableness.

State court rulings on evidentiary matters generally implicate only state law and "are not reviewable by a habeas court unless the errors alleged are so prejudicial as to constitute fundamental unfairness." Warren v. Miller, 78 F. Supp. 2d 120, 135 (E.D.N.Y. 2000), citing Rosario v. Kuhlman, 839 F.2d 918, 924-25 (2d Cir. 1988).

> An erroneous evidentiary ruling may qualify for
> habeas relief only if it "by itself so infected the
> entire trial that the resulting conviction violates due
> process." McGuire, 502 U.S. at 72, 112 S.Ct. at 582
> (internal citation omitted).  To prevail on such a
> claim, "a petitioner must demonstrate that the state
> court's evidentiary error 'deprived [him] of a funda-
> mentally fair trial.'" Velazquez v. Poole, No. 04 Civ.
> 478 (ENV)(CLP), 2007 WL 3240550, at *21 (E.D.N.Y. Oct.
> 30, 2007) (quoting Zarvela v. Artuz, 364 F.3d 415, 418
> (2d Cir. 2004) (per curiam), cert. denied, 543 U.S.
> 879, 125 S.Ct. 140 (2004)).  "[T]he test for determin-

16

> ing whether the ruling denied the defendant a fair
> trial is whether it would have created 'a reasonable
> doubt that did not otherwise exist.'" <u>Collins v.
> Scully</u>, 755 F.2d 16, 18 (2d Cir. 1985) (citing <u>United
> States v. Agurs</u>, 427 U.S. 97, 112, 96 S.Ct. 2392, 2401
> (1976)).  Consequently, "[e]rroneous evidentiary rul-
> ings do not automatically rise to the level of consti-
> tutional error. . . .  Rather, the writ would issue
> only where petitioner can show that the error deprived
> [him] of a <u>fundamentally</u> <u>fair</u> trial."  <u>Taylor v.
> Curry</u>, 708 F.2d 886, 891 (2d Cir. 1983) (citing <u>Cham-
> bers v. Mississippi</u>, 410 U.S. 284, 302–03, 93 S.Ct.
> 1038, 1049 (1973)) (emphasis in original).

<u>Cusamano v. Donelli</u>, 06 Civ. 6047 (PAC)(THK), 2007 WL 7216166 at

*15 (S.D.N.Y. Dec. 19, 2007) (Katz, M.J.) (Report & Recommenda-

tion) (alterations in original), <u>adopted at</u>, 2010 WL 2653653

(S.D.N.Y. July 1, 2010) (Crotty, D.J.).

     Judged by the foregoing, the denial of leave to reopen

Bernard's cross-examination and the consequent exclusion of

Bernard's prior statement did not deprive petitioner of a fair

trial because the admission of Bernard's prior statement would

not have created a reasonable doubt that otherwise would not have

existed.

     First, the impeachment value of the putatively incon-

sistent statement to Gill -- that Bernard had had an "altera-

tion" with petitioner -- was slight.  Bernard testified at trial

that petitioner demanded and obtained cash while  threatening to

hit him in the head with a hammer.  According to Bernard's trial

testimony, petitioner picked up the hammer and held it above

Bernard's head in a manner that suggested petitioner would strike
Bernard with the hammer if Bernard did not give petitioner money.
An "altercation" is "an angry or heated argument." Webster's New
World Dictionary of the American Language, 40 (2d Coll. ed.
1980).  Although there are material differences between an
altercation and a robbery, viewed broadly, they both describe a
hostile encounter between individuals.  There was nothing in
Gill's description of Bernard's putative statement that remotely
suggested Bernard had reported a friendly meeting with peti-
tioner.  Although statements offered for impeachment need not be
"diametrically opposed" to a witness's testimony in court, United
States v. Agajanian, 852 F.2d 56, 58 (2d Cir. 1988), as the
meaning of the out-of-court statement approaches the meaning of
the in-court testimony, the impeachment value diminishes.
Because the two statements here had material similarities, the
impeachment value of the statement Bernard allegedly made to Gill
was small.

        Second, as both the petitioner's appellate counsel and
the Appellate Division noted, even in the absence of his alleged
statement to Gill, Bernard's cross-examination revealed a number
of inconsistencies.  According to petitioner's appellate counsel,
Bernard's cross-examination disclosed inconsistencies concerning
when his store opened, whether he had any employees, whether a

18

customer was already in the store when petitioner entered, whether petitioner held the hammer over Bernard's head or his own, how much money petitioner took from Bernard, where petitioner got into a cab after the robbery, the manner in which a detective took custody of the hammer and numerous other matters (Pet. Brf. at 7-9, annexed as Ex. A to Fleischman Decl.).  Given this record, the Appellate Division's conclusion that the putatively inconsistent statement was "cumulative to other impeachment material," People v. Smith, supra, 90 A.D.3d at 61, 936 N.Y.S.2d at 136, was clearly correct.

        Finally, there can be no dispute that petitioner's counsel did have the opportunity to lay the required foundation during his cross-examination of Bernard and that recalling Bernard would have delayed the trial.  This was another factor that the Trial Court and the Appellate Division properly considered in concluding that it was not appropriate to permit petitioner to reopen Bernard's cross-examination.

        For all the foregoing reasons, the Trial Court's refusal to allow petitioner to reopen Bernard's cross-examination was correct, was not contrary to clearly established Supreme Court precedent and did not deprive petitioner of a fundamentally fair trial.  The Appellate Division's decision rejecting this

claim was correct and, at the very least, well within the range of reasonableness.

    2.  Ineffective Assistance
       of Counsel

Petitioner next claims that his trial counsel was ineffective for failing to lay the proper foundation to impeach Bernard. This claim also fails.

In order to prevail on an ineffective-assistance-of-counsel claim, a habeas petitioner must meet the now-familiar, two-part test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 686-87 (1984).

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>
>           \*     \*     \*
>
> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable. Unless a defendant makes both showings, it cannot be said that the conviction . . .

> resulted from a breakdown in the adversary process that
> renders the result unreliable.

Accord Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005); Aeid
v. Bennett, 296 F.3d 58, 62 (2d Cir. 2002); Hernandez v. United
States, 202 F.3d 486, 488 (2d Cir. 2000); Hurel-Guerrero v.
United States, 186 F.3d 275, 282 (2d Cir. 1999); McKee v. United
States, 167 F.3d 103, 106-07 (2d Cir. 1999); Jackson v. Leonardo,
162 F.3d 81, 85 (2d Cir. 1998).

In determining whether counsel's performance was
objectively deficient, courts "must indulge a strong presumption
that counsel's conduct falls within the wide range of reasonable
professional assistance; that is, the [petitioner] must overcome
the presumption that, under the circumstances, the challenged
action might be considered sound trial strategy." Strickland v.
Washington, supra, 466 U.S. at 689 (internal quotation marks
omitted).

> To establish prejudice under the second prong [of
> Strickland, a habeas petitioner] "must show that there
> is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding
> would have been different." Strickland, 466 U.S. at
> 694, 104 S.Ct. 2052. A "reasonable probability" is one
> that is "sufficient to undermine confidence in the
> outcome," id., which "requires a 'substantial,' not
> just 'conceivable,' likelihood of a different result."
> Pinholster, 131 S.Ct. at 1403 (quoting [Harrington v.]
> Richter, [562 U.S. 86, ---,] 131 S.Ct. [770,] 791
> [(2011)]).

Jackson v. Conway, 763 F.3d 115, 153 (2d Cir. 2014).

Because the test is conjunctive, a habeas petitioner's failure to satisfy either prong requires that the challenge to the conviction be rejected.  Bennett v. United States, 663 F.3d 71, 85 (2d Cir. 2011); see Strickland v. Washington, supra, 466 U.S. at 697.

      Even if I make the generous assumption that counsel's performance was sufficiently wanting to satisfy the first prong of the Strickland test, the Appellate Division's determination that petitioner has failed to demonstrate prejudice was comfortably within the range of reasonableness.  As explained in the preceding section, the purportedly prior inconsistent statement had modest impeachment value at best because it did not directly contradict Bernard's trial testimony and Bernard had been impeached based on a number of other inconsistencies in his testimony.  Given the other inconsistencies with which Bernard was impeached, the utility of his alleged statement to Gill was de minimis.

      Because the omitted testimony probably would have had such a limited effect on the jury, I agree with the Appellate Division that petitioner has failed to demonstrate any reasonable probability that the outcome of the trial would have been different had testimony concerning petitioner's alleged statement to Gill been admitted.  Petitioner has, therefore, failed to estab-

lish that he suffered any prejudice as a result of counsel's alleged ineffective assistance.

    3.   The Weight of
        the Evidence

Petitioner's final claim is that the verdict was against the weight of the evidence. This claim also fails.

As explained in <u>Correa v. Duncan</u>, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001), a claim that a verdict is against the weight of the evidence is purely a state law claim that is not cognizable in a federal habeas corpus proceeding:

> Correa argues that the guilty verdict was against the weight of the evidence. This claim is distinct from an attack on a verdict based on the legal sufficiency of the evidence. A "weight of the evidence" argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles. <u>See</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (1979) (Fourteenth Amendment requires record evidence to reasonably support a finding of guilt beyond a reasonable doubt); <u>[s]ee</u> <u>People v. Bleakley</u>, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987) (weight of the evidence is based on court's factual review power; sufficiency of evidence claim based on the law). Accordingly, the Court is precluded from considering the claim. <u>See</u> 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (<u>habeas</u> <u>corpus</u> review is not available where there is simply an alleged error of state law).

Accord Garrett v. Perlman, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (Sweet, D.J.); see also Feliz v. Conway, 378 F. Supp. 2d 425, 430 n.3 (S.D.N.Y. 2005) (Patterson, D.J.); Keane v. N.Y. State Div. of Parole, 04 CV 2070 (CBA), 2005 WL 1594200 at *2 n.1 (E.D.N.Y. July 5, 2005); Brown v. Filion, 03 Civ. 5391 (DLC)(GWG), 2005 WL 1388053 at *12 (S.D.N.Y. June 13, 2005) (Gorenstein, M.J.) (Report & Recommendation), adopted at, 2005 WL 2159675 (S.D.N.Y. Sept. 6, 2005) (Cote, D.J.); Roman v. Filion, 04 Civ. 8022 (KMW)(AJP), 2005 WL 1383167 at *30 (S.D.N.Y. June 10, 2005) (Peck, M.J.) (Report & Recommendation) (Peck, M.J.).

Even if I construe the petition to assert a claim that the evidence was insufficient to sustain the conviction, the claim fails.

A habeas petitioner asserting that the evidence was insufficient to sustain the conviction faces a heavy burden.  In reviewing a claim that evidence was legally insufficient,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

Jackson v. Virginia, 443 U.S. 307, 319 (1979) (citations and emphasis omitted); accord United States v. Mi Sun Cho, 713 F.3d

716, 720 (2d Cir. 2013) ("The question is not whether this
[C]ourt believes that the evidence at trial established guilt
beyond a reasonable doubt, but rather, whether <u>any</u> rational trier
of fact could have found the essential elements of the crime
beyond a reasonable doubt." (internal quotations marks and
citations omitted; emphasis and alteration in original));
<u>Policano v. Herbert</u>, 507 F.3d 111, 116 (2d Cir. 2007) ("'[A]
petitioner bears a very heavy burden in convincing a federal
habeas court to grant a petition on the grounds of insufficiency
of the evidence.'" (alteration in original)), <u>quoting</u> <u>Fama v.
Comm'r of Corr. Servs.</u>, 235 F.3d 804, 811 (2d Cir. 2000); <u>Davis
v. Greene</u>, 04 Civ. 6132 (SAS), 2008 WL 216912 at *6 (S.D.N.Y.
Jan. 22, 2008) (Scheindlin, D.J.) (same).

　　　　Under this "rigorous standard," <u>Wheel v. Robinson</u>, 34
F.3d 60, 66 (2d Cir. 1994), "all possible inferences that may be
drawn from the evidence must be construed in the prosecution's
favor," <u>Maldonado v. Scully</u>, 86 F.3d 32, 35 (2d Cir. 1996),
<u>citing</u> <u>United States v. Rosa</u>, 11 F.3d 315, 337 (2d Cir. 1993),
and the evidence must be viewed in the light most favorable to
the prosecution.  <u>United States v. Jass</u>, 569 F.3d 47, 50 (2d Cir.
2009); <u>United States v. Hertular</u>, 562 F.3d 433, 436 (2d Cir.
2009).  Further, "assessments of the weight of the evidence or
the credibility of witnesses are for the jury and are not grounds

25

for reversal;" habeas courts must defer to the jury's assessment of both these issues.  Maldonado v. Scully, supra, 86 F.3d at 35, citing United States v. Rosa, supra, 11 F.3d at 337; see also United States v. Brooker, 526 F. App'x 82, 84 (2d Cir. 2013) (summary order) ("All issues of credibility, including the credibility of a cooperating witness, must be resolved in favor of the jury's verdict" (internal quotation marks and citations omitted)).  A "federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson v. Virginia, supra, 443 U.S. at 326.  A petitioner's conviction cannot be successfully attacked in a habeas proceeding on suffi- ciency grounds unless the record is "so totally devoid of eviden- tiary support that a due process issue is raised." Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) (internal quotation marks omitted); see generally United States v. Josephberg, 562 F.3d 478, 487-88 (2d Cir. 2009).

Petitioner has failed to establish that no reasonable jury could have found the elements of robbery in the first degree proven beyond a reasonable doubt.

The first step in assessing a habeas petition alleging insufficiency of the evidence is to identify the elements of the offense as defined by state law.  See Coleman v. Johnson, ---U.S.---,  132 S. Ct. 2060, 2064 (2012); Gutierrez v. Smith, 702 F.3d 103, 113 (2d Cir. 2012); Langton v. Smith, 630 F.3d 310, 314 (2d Cir. 2011).  The pertinent provision of the New York Penal Law defines robbery in the first degree as follows:

> A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
>
> \*     \*     \*
>
> 3. Uses or threatens the immediate use of a dangerous instrument . . . .

N.Y. Penal L. § 160.15(3).  A "dangerous instrument" is defined as "any instrument, article or substance . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury."  N.Y. Penal L. § 10.00(13).  A hammer is a "dangerous weapon" when used in a manner that threat-ens its use against an individual.  People v. Holmes, 9 A.D.3d 689, 691, 780 N.Y.S.2d 96, 98 (3rd Dep't 2004).  Thus, to estab-lish petitioner's guilt, the prosecution had to prove two ele-ments beyond a reasonable doubt:  "(a) [the] forcible stealing

27

(larceny) of property, and (b) [the] aggravating factors of serious physical injury, or use or threatened use of a dangerous weapon." People v. Ruckdeschel, 51 A.D.2d 861, 861, 380 N.Y.S.2d 163, 164 (4th Dep't 1976).

Bernard testified that petitioner demanded and obtained money from him while holding a hammer over Bernard's head in a manner that unmistakably threatened serious physical injury if Bernard did not comply with petitioner's demand.  Viewing the evidence, as I must, in the light most favorable to the prosecution, resolving all credibility issues in favor of the prosecution and bearing in mind that the uncorroborated testimony of a single witness is sufficient to establish a fact beyond a reasonable doubt, United States v. Danzey, 594 F.2d 905, 916 (2d Cir. 1979); accord United States v. Frampton, 382 F.3d 213, 222 (2d Cir. 2004), the foregoing testimony is unquestionably sufficient to prove petitioner's guilt beyond a reasonable doubt.  Salnave v. Ercole, 08-cv-5096 (ENV), 2014 WL 3014536 at *10 (E.D.N.Y. July 3, 2014) (uncorroborated testimony of a single witness is sufficient to establish elements of robbery beyond a reasonable doubt notwithstanding inconsistencies in the witness's testimony).

The majority of petitioner's arguments concerning the sufficiency of the evidence consists of attacks on Bernard's

credibility.   Petitioner's attacks on Bernard's credibility are really nothing more than an invitation to have this court re-assess the credibility determinations made by the jury.   As the authorities cited at pages 24-26 teach, a habeas court cannot revisit the jury's credibility determinations.

Similarly, petitioner's citation of and reliance on the inconsistencies in Bernard's testimony is no basis for habeas relief.   See Quartararo v. Hanslmaier, 186 F.3d 91, 95, 96 (2d Cir. 1999) (federal habeas courts must not assume "the position of a thirteenth juror;" "inconsistencies [a]re for the jury to resolve" not the district court), citing Herrera v. Collins, 506 U.S. 390, 401 (1993).

Thus, petitioner's claim concerning the weight and sufficiency of the evidence against him also fails.

IV.   Conclusion

Accordingly, for all the foregoing reasons, I respect-fully recommend that the petition be denied in all respects.

In addition, because petitioner has not made a substan-tial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued.   28 U.S.C. § 2253.   To warrant the issuance of a certificate of appealability, "petitioner must show that reasonable jurists

could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Middleton v. Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam) (internal quotation marks omitted, alteration in original); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005) (per curiam). For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that petitioner's federal rights were not violated.

        I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 445 (1962).

## V.   Objections

        Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. See also Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Paul G. Gardephe, United States District Judge, 40 Centre Street,

30

Room 2204, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Gardephe. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        December 4, 2014

                              Respectfully submitted,

                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Mr. Frank Smith
DIN 09-A-6041
Eastern New York Correctional
   Facility
30 Institution Road
P.O. Box 338
Napanoch, New York  12458-0338

31

Priscilla Steward, Esq.
Lisa E. Fleischmann, Esq.
Assistant Attorneys General
State of New York
120 Broadway
New York, New York  10271